STEVENS v. HAMANN

(January 27, 1930. Opinion and Decree.)

James G. Schillin, of New Orleans, attorney for plaintiff, appellee.

Lazarus, Weil & Lazarus, and Herman S. Lindy, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff, Stevens, was injured as the result of a collision between the motorcycle on which he was riding and an automobile truck owned by defendant and operated by one of his employees within the scope of his employment.

Stevens, an employee of an agency which furnishes to customers the services of private watchmen, was required to ride a motorcycle in going from one to another of the various establishments guarded by his employer, and was riding his motorcycle up Broad street towards Canal street at about 5:10 p. m. in the late afternoon of November 7, 1928.

The truck was going in the same direction, and, as Stevens desired to go a little faster than the truck, he attempted to pass between it and the neutral ground which was on the left of both vehicles.

Just as the two vehicles reached the uptown driveway of Bienville street, which, like Broad street, is at that point a neutral ground street, having two driveways, the truck turned to its left in an effort to enter the uptown driveway of Bienville street on its way towards the river. As it made this turn, the collision occurred.

Whether the truck turned its left front wheel into the side of the motorcycle or the motorcycle dashed headlong into the left front wheel of the truck is one of the disputed questions of fact.

In spite of plaintiff's allegation that the truck was being operated at an excessive rate of speed, he made no effort to prove this, and it is now conceded that the speed of the truck was very moderate.

Plaintiff's theory of the cause of the accident, he having now abandoned his charge of excessive speed, is that the truck was proceeding near the right-hand curb or sidewalk, when suddenly and without a hand signal or other warning its driver turned it sharply to the left in an effort to enter the intersecting street.

Defendant, on the other hand, stoutly maintains that the truck for at least several hundred feet prior to the collision had been near the left-hand curb or neutral ground, and that the driver had extended his hand as a signal of his intention to turn to the left when suddenly and without warning plaintiff attempted to squeeze through the narrow opening between the truck and the neutral ground and ran into the left front wheel of the truck just after it commenced to make the turn.

We have made a particularly careful study of the testimony because of the earnest contention of counsel for the defendant that the witness Miguel, on whose statements the trial judge seems to have largely relied, is unworthy of belief.

The testimony of this man and the circumstances surrounding his appearance as a witness convince us that his evidence, if accepted at all, should be seasoned with the proverbial grain of salt. He stated that he did not even know the plaintiff prior to the accident, although it appears that he and plaintiff lived only a few doors apart. According to his testimony, although he was nearer the scene of the accident than anyone else, he did not go to plaintiff's assistance, and he gave as his reason his fear that plaintiff had been killed. This testimony strains our credulity almost to the breaking point, because it is certain that Stevens, the injured man, arose almost immediately after the accident and did not appear to be badly hurt.

Although Miguel did not go to Stevens' assistance because of his fear that he had been killed, he states that he waited in his car at the scene of the accident for at least 25 or 30 minutes after Stevens had been taken to the hospital in the truck, and after all persons and vehicles concerned in the catastrophe had left.

The fact that Miguel was not summoned as a witness when the case was first fixed for trial, although his testimony was certainly most important, that other witnesses who were subpoenaed were never placed on the stand, and that, although the witnesses were separated, Miguel's testimony was taken before that of plaintiff himself, and while plaintiff himself remained in the courtroom, are circumstances which tend to throw a shadow of doubt upon his statements.

Last, but by no means the weakest link in the chain of circumstances which tend to affect the credibility of the witness, is his insistence that he has never, at any time, told anyone what he knew about the facts of the case. It is almost unheard of for a witness to testify without first disclosing to the party or to the attorney what he knows. There is, of course, nothing improper in a witness so doing, but his denial that he has done so is so highly improbable as to influence us considerably in our opinion that his statements are unworthy of belief.

If we eliminate Miguel's testimony, the evidence preponderates in favor of defendant. The driver of the truck states that he put out his hand before making the left turn. He is corroborated in this by the testimony of his friend, Trigo, who was riding with him on the seat of the truck. Against this we have only the evidence of Stevens himself, who was plainly trying to squeeze through a dangerously small opening, and who, with his attention focused on this hazardous maneuver, may not have noticed the hand of the driver, which, on account of the height of the truck as compared with that of the motorcycle, would have been considerably above his line of vision.

That the truck was very near to the left-hand curb or neutral ground seems certain. In addition to the testimony of the two men on the truck, we have the statement of Edward A. Betz, an entirely disinterested witness, who was on the other driveway of Broad street, and who states that he saw the truck near the neutral ground and about to turn into Bienville street.

Plaintiff states that in his effort to pass the truck he sounded his horn several times. If the truck was near the right-hand curb, there was no necessity for this, as the motorcycle could have passed easily without requiring the truck to move further to the right. On this point also we find the testimony of Miguel impossible of acceptance, because he testifies that the truck was on the right-hand side of the driveway and yet that he blew his horn several times for it to move over to the right so that he might pass to the left.

Another circumstance which leads us to believe that the testimony of plaintiff is not entirely in line with the facts is his statement that the truck ran into the side of his motorcycle, whereas it seems to be well established that his

motorcycle dashed headlong into the wheel of the truck. This is evidenced by the location of the damage to the motorcycle.

In his pleadings plaintiff's case was pitched on three charges of negligence: First, the high speed of the truck; second, that the truck turned from the right side of the driveway sharply to the left; and third, that no hand signal was given.

The first charge was abandoned. The second is completely disproved, and we think that on the third the evidence preponderates in favor of defendant. Plaintiff's case must therefore fall.

Of course, what we have had to say should not in the slightest degree reflect on the integrity or the professional standing of counsel for plaintiff, whom we have known for many years, and for whom we have the highest regard.

The facts of this case are almost identical, even as to the respective locations of the witnesses, with those which appeared in the Floyd W. Alford v. J. Clifford Lyons (No. 11,168) 11 La. App. 670, 124 So. 690, decided by us on November 18, 1929.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of the defendant dismissing plaintiff's suit.